## Drake v. Zoning Board of Adjustment

*M. J. O'Donnell*, for appellant.

*G. C. Farrier*, assistant city solicitor, and *F. F. Truscott*, city solicitor, for Philadelphia Zoning Board of Adjustment.

FLOOD, J., June 5, 1948.—These are two appeals from the zoning board of adjustment's ruling in the case of premises of appellant on Gillingham Street approximately 80 feet west of Oakland Street in the City of Philadelphia.

The case commenced in C. P. No. 5, March term, 1948, no. 2380, has to do with a rebuilding, following a fire loss. Previous to the fire there was a building 173 feet by 84 feet on the premises 13 feet high but with a peak roof containing a skylight, which in the center was 8 feet higher. Following the fire, appellant is seeking to rebuild a part of the said building 15 feet by 31 feet, two stories high, the second floor to consist of an office only. The entire building is to be 20 feet high, with a flat roof covering the entire area of 15 feet by 31 feet. The zoning board has refused a permit for this building.

The building is a nonconforming use existing prior to the zoning ordinance. Section 4(5) of the zoning ordinance provides that a building containing such a use may be reconstructed for the same use provided that when rebuilt the building does not exceed the height or area of the building so destroyed. There is no increase here in area and therefore we are solely concerned with height. The new building does not exceed in height the topmost point of the building

which was destroyed. But we are faced with the question whether squaring off a building so that the whole of it is as high as the highest point before the fire is a violation of the ordinance. Unfortunately for appellant this is specifically covered by the ordinance. Section 2(10) defines "Height of a Building" for the purpose of the ordinance as follows:

"The vertical distance from the mean curb level to the top of the facade wall or from the average ground elevation at the building set-back line if such is higher than the mean curb level. If such wall is a gable, to the mean height between the eaves and the ridge."

In the old building the height of the eaves was 13 feet and that of the ridge was 21 feet. Therefore the mean height between the eaves and the ridge was 17 feet. Consequently plaintiff has no right under the ordinance to square off his building at a height of 20 feet.

The case brought in C. P. No. 6, as of December term, 1947, no. 5388, involves another part of the property. Here libellant seeks to increase the height of his building by three and one quarter feet in order to enable him to unload trucks delivering material to him inside his building. In the case of Brown et al. v. Drake, C. P. No. 6, June term, 1946, no. 4795, this court restrained appellant from erecting a certain hoisting device over the part of an alley adjoining his property over which he has a right of way. He now wishes to erect a similar device inside his own property which is almost entirely covered by his buildings. In order to allow the erection of the hoisting device at a height sufficient to unload the trucks, he must increase by three and one quarter feet the height of a certain part of his building which is approximately 17 feet by 31 feet in area. This request is covered by section 4, subsection 6, since it is an extension of an existing nonconforming use. This subsection provides that such

use may be extended provided that the additional alteration shall not exceed 25 percent of the area of the building at the time of the approval of the ordinance, and that any and all such extensions shall be in conformity with the several provisions and regulations of this ordinance in the district where the building is located. The additional height required would not violate any regulation as to height of the buildings.

The extension requested in this petition is within the discretion of the board but the evidence seems pretty clearly to indicate that unless it is granted plaintiff will have to resort to the unloading of material delivered to him by hand and that certain unloading operations will take four to five hours instead of twenty minutes, using the same number of men. It appears that, under the board's ruling, appellant may have to go out of business or else occupy the bed of Gillingham Street for long periods of time with his unloading operations. Although a number of neighbors entered protests, there is nothing to indicate that any neighboring property will be injured in any way by this extension. On the contrary, it appears to me likely that they may be injured if it is not granted and appellant performs his unloading operations on the public highway. The extension will leave the building well within the permissible height, is a relatively insignificant increase and covers a relatively small area of the total building. In our opinion the board's refusal to grant the extension creates such extreme hardship as to deprive appellant of the use of his property without due process of law and is consequently an abuse of its discretion.

The appeal as of C. P. No. 5, March term, 1948, no. 2380, is dismissed.

The appeal of C. P. No. 6, December term, 1947, no. 5388, is sustained, and the decision of the zoning board of adjustment is hereby reversed.

FLOOD, J., November 12, 1948.—The court is of the opinion that the extension of a nonconforming use is a matter within the discretion of the zoning board. There is no such hardship here in the case of appellant's office as can lead us to say that this discretion was exercised in a way so arbitrary that it was an abuse by the board. It seems to us that the board might well have exercised its discretion differently without substantial harm to anyone. We cannot reverse its decision under the facts here shown, but the court en banc believes that the record should be remitted to the board for further consideration in the light of this opinion.

The exceptions are dismissed and the record is remitted to the board for further proceedings in accordance with this opinion.